IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                      CHAPTER 7
RICK MYERS                                      CASE NO. 00-53489EE
TINA MYERS


Hon. Robert Gambrell                              Attorneys for Debtors
P. O. Box 8299
Biloxi. MS  39535

Hon. Derek A. Henderson
111 East Capitol St. Suite 455
Jackson, MS  39201

Hon. Kimberly R. Lentz                           Chapter 7 Trustee
P. O. Box 927
Gulfport, MS  39502

Hon. William J. Little, Jr.                Attorney for Chapter 7 Trustee
P. O. Box 22642
Jackson, MS  39225-2642

Hon. Robert A. Byrd           Attorneys for Liberty Mutual Insurance Co.. et. al.
P. O. Box 1939
Biloxi. MS  39533

Hon. Kelly D. Simpkins
P. O. Box 131
Jackson, MS  39205


Edward Ellington, Judge


## MEMORANDUM OPINION ON *LIBERTY MUTUAL INSURANCE COMPANY'S MOTION TO COMPEL*

**THIS MATTER** came before the Court for hearing on *Liberty Mutual Insurance*

*Company's Motion to Compel*, the *Response to Liberty Mutual Insurance Company's Motion to*

*Compel* filed by Rick Myers and Tina Myers (Debtors), and the *Reply to Response to Liberty Mutual*

*Insurance Company's Motion to Compel* filed by Liberty Mutual Insurance Company (Liberty Mutual). After considering the pleadings and the arguments of the parties, the Court finds that *Liberty Mutual Insurance Company's Motion to Compel* is well taken and should be granted.

## DISCUSSION

### a.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (N) and (O).

### b.

On August 17, 2000, the Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code styled *Rick and Tina Myers dba P & L Properties dba Express Personnel* in the Gulfport Divisional Office of the Southern District of Mississippi. The case was assigned to the Judge Edward R. Gaines.[1] On March 2, 2001, the Debtors converted their case to one under Chapter 7 of the United States Bankruptcy Code. Kimberly R. Lentz (Trustee) was appointed the Chapter 7 Trustee[2].

As stated above, the Court has before it *Liberty Mutual Insurance Company's Motion to Compel* (Motion) in which Liberty Mutual requests that the Court order John McDonnell, the

---

[1]In 2007, Judge Gaines recused himself and transferred the Debtors' bankruptcy case and related adversary proceeding to the Jackson Divisional Office of the Southern District of Mississippi. Judge Edward Ellington was assigned the case.

[2]C. Thomas Anderson was the Chapter 7 Trustee when the Debtors converted from a Chapter 13 to a Chapter 7. The case was closed. When the Debtors reopened their case, Kimberly R. Lentz was appointed the Chapter 7 Trustee

2

attorney who prepared the Debtors' schedules and who represented the Debtors at the time of the conversion, to produce a complete copy of his file pertaining to his representation of the Debtors in their bankruptcy and to testify as to what specific information was given to him by the Debtors in order for him to represent them in their bankruptcy. This Motion has evolved out of litigation between the parties which started in state court, was removed to district court and taken up in bankruptcy court. In its Motion, Liberty Mutual asserts that the information to be compelled is relevant to the determination of whether the Debtors' conversion from a Chapter 13 to a Chapter 7 was in bad faith. When Liberty Mutual attempted to depose Mr. McDonnell, he refused to testify on the basis of attorney-client privilege. Liberty Mutual contends that the attorney-client privilege does not arise in this case.

Alternatively, Liberty Mutual asserts that even if the attorney-client privilege does arise in this situation, the Debtors waived it. When Liberty Mutual deposed Mr. Myers and questioned him about his schedules and about the conversion of the Chapter 13 to a Chapter 7, Mr. Myers pled reliance on his attorney's advice. Consequently, Liberty Mutual contends that the motion to compel should be granted because even if the attorney-client privilege did arise, Mr. Myers waived it when he pled reliance on his attorney's advice. As the attorney-client privilege belongs to the client. Liberty Mutual asserts that Mr. McDonnell may not use the shield of attorney-client privilege once his client has waived it.

In their *Response to Liberty Mutual Insurance Company's Motion to Compel* (Response), the Debtors first contend that the Motion to Compel is untimely and should be denied. The Debtors further contend that the discovery Liberty Mutual is attempting to obtain pertains to the question of whether the cause of action against Liberty Mutual is property of the bankruptcy estate because the

3

Debtors converted to a Chapter 7 in bad faith. The Debtors allege that the cause of action against Liberty Mutual did not accrue until after the Debtors converted to a Chapter 7, and therefore, it makes no difference whether the case was converted in bad faith or not because the cause of action against Liberty Mutual accrued after the date of conversion and is not property of the estate. Consequentially, the Debtors assert that Liberty Mutual is not entitled to the discovery. In addition, the Debtors contend that the discovery sought by Liberty Mutual is protected by the attorney-client privilege and that the Debtors have not waived the attorney-client privilege.

Therefore, the issue before the Court is whether the attorney-client privilege applies to prevent Liberty Mutual from obtaining the discovery it is seeking.

### c.

The Court finds the Debtors' contention that the Motion to Compel should be denied as it is untimely to be without merit. As stated previously, these parties have been involved in litigation in three different courts and with at least four different judges. Because of the convoluted path this matter has taken, the Court does not find that the Motion is untimely.

The Court also finds without merit the Debtors' position that the discovery requested by Liberty Mutual is unnecessary because the cause of action against Liberty Mutual accrued after the date of conversion, and therefore, is not property of the Debtor's estate. Whether the cause of action is property of the Debtors' estate is an issue that must be determined by this Court at a later date[3].

---

[3]Contrary to the Debtors' position, the Court will note that in the district court litigation between the parties, Judge Henry T. Wingate held that: "Mississippi courts have held that a cause of action based on a false representation, such as the claims at issue here, 'accrues upon the completion of the sale induced by such false representation or upon the consummation of the fraud.' *Black v. Kerry Canada, Inc.,* 791 F.Supp 1120, 1123 (S.D. Miss. 1990); *FDIC v. Belli,* 981 F.2d 838, 840 (5th Cir. 1993) (cause of action accrues when it comes into existence, not when it is discovered). The first policy was issued in December of 2000 while the bankruptcy

4

**d.**

The purpose of the rules of evidence is to facilitate all parties in ascertaining the truth. However, privileges exist that permit the exclusion of evidence in order to protect a relationship or an interest. "Since the effect of a privilege is to suppress the truth. a privilege should be recognized only if the interest or relationship is of outstanding importance and would undoubtedly be harmed by denying the protection of privilege." Barry Russell, *Bankruptcy Evidence Manual* § 501.1, 1023 (Thomson/West 2007).

Federal Rule of Evidence 501 states:

**Rule 501. General Rule**

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority. the privilege of a. . .person, . . .thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision. the privilege of a. . .person. . . .thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.

The Mississippi rule on lawyer-client privilege states in pertinent part:

**RULE 502. LAWYER-CLIENT PRIVILEGE**

    . . . .

(b) General Rule of Privilege.  A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the

---

was open. and prior to the conversion.  Accordingly, this court finds that the cause of action is core since: (1) the cause of action accrued prior to the conversion, (2) it is property of the bankruptcy estate if the conversion was fraudulent, and (3) it effects the liquidation of the assets of the bankruptcy estate." Wingate. J. *Infinity Services of Miss., LLC and Rick Myers vs. Liberty Mutual Insurance Co., et. al.,* Case No. 3:04cv392-HTW-JCS. *Order*. p. 6-7. March 24, 2005.

purpose of facilitating the rendition of professional legal services to the client (1) between himself. . .and his lawyer or his lawyer's representative, . . . .

(c) Who May Claim the Privilege. The privilege may be claimed by the client, . . . . The person who was the lawyer. . .at the time of the communication is presumed to have authority to claim the privilege *but only on behalf of the client.*

Miss. R. Evid. § 502(b) (emphasis added).

The attorney-client privilege was created in order to ensure the honest and open communication between attorneys and their clients. "The privilege serves the purpose of promoting 'full and frank communications.'" *In re Eddy,* 304 B.R. 591, 596 (Bankr. D. Mass. 2004)(quoting *Upjohn v. United States.* 449 U.S. 383, 389 (1981)). Open and honest communication is the foundation of the relationship between attorneys and their clients. Without the privilege, clients would not divulge important confidential information to their attorneys, and therefore, their attorneys would not be able to provide adequate advice or representation. "The privilege, however, is not meant to serve as an all-purpose shield. Since the attorney-client privilege may obstruct the search for truth, it should be strictly construed and applied only where necessary to ensure fully informed legal advice." *Id.*

In the context of a bankruptcy, the attorney-client privilege is narrowed. As aptly explained by the Honorable Henry J. Boroff in *In re Eddy*:

In exchange for an automatic stay of creditor collection activity and potential discharge of certain debt, debtors are obligated to disclose all of their assets and liabilities. *U.S. v. White.* 950 F.2d 426, 430 (7th Cir. 1991); *In re French,* 162 B.R. 541, 548 (Bankr. D.S.D. 1994). These disclosures are necessary to ensure that bankruptcy relief is accorded only to the honest and compliant debtor. *French,* 162 B.R. at 548. A debtor has no reasonable expectation that information will be kept confidential if it must be disclosed in bankruptcy filings, *Id.* at 547 (citing to *White,* 950 F.2d at 430), and where the Debtor has no reasonable expectation of confidentiality, the attorney-client privilege is unavailable. *See Epstein* at 4 (citing to J. Wigmore, *Evidence* § 2285 at 527). Thus, it has been previously held that the

6

>information disclosed to an attorney for the assembly of a bankruptcy petition and
>schedules does not fall within the scope of the attorney-client privilege. *White* at
>430; *French* at 548.

*In re Eddy*, 304 B.R. at 596.

In the case at bar, the Debtors were obligated to disclose all liabilities, and especially, all assets as part of an honest financial reorganization. Therefore, the Debtors had no reasonable expectation that the information they gave Mr. McDonnell would be kept confidential. Consequently, there is no attorney-client privilege which would prevent Liberty Mutual from obtaining the documents it is seeking.

Assuming for the sake of argument that the privilege did exist, once Mr. Myer raised the advice of his attorney as part of his defense, he waived the privilege. "Once a party has used communications between himself and his attorney as a claim or defense, it would be unfair to deny the opposing party discovery of the only information relevant to such claim or defense on a claim of privilege. Such use of the attorney-client privilege would transform it from a defense against intrusion into a weapon in the battlefield of litigation." *In re Fortune Natural Resources Corp.*, 350 B.R. 270, 274 (Bankr. E.D.La. 2005). *See also Cuervo v. Snell (In re Snell)*, 232 B.R. 684, 685 (Bankr. S.D.Ohio 1999)(where the advice of a lawyer is made the basis of a defense fairness requires that the privilege has been waived). In addressing this same issue, the Mississippi Supreme Court held that "(w)hen Moore used confidential communications with her attorney to toll the statute of limitations, she used the attorney-client privilege as a sword: fairness requires that she not now be allowed to hide behind the shield of attorney-client privilege." *Jackson Medical Clinic for Women v. Moore*, 836 So.2d 767, 773 (Miss. 2003).

Additionally, there are exceptions to the attorney-client privilege. Section 502(d) states in

7

pertinent part:

> (d) Exceptions.  There is no privilege under this rule:
>
>> (1) *Furtherance of Crime or Fraud.* If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonable should have known to be a crime or fraud.

Miss. R. Evid. § 502(d)(1).

"The privilege between client and attorney ceases when the purpose of the privilege is abused, when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act." *United States v. Ballard,* 779 F.2d 287, 292 (5th Cir. 1996), *cert. denied,* 475 U.S. 1109 (1986).  In the district court litigation involving the same parties, Judge Wingate previously ruled on the crime or fraud exception to the privilege.  In his *Order* denying the plaintiff's motion to quash the subpoena of Mr. McDonnell, Judge Wingate stated:

> "If . . . the client seeks legal advice for the purpose of being assisted or guided in the commission of a crime or the perpetration of a fraud, the communication is not sheltered." *United States v. Ballard,* 779 F.2d 287, 290 (5th Cir.. 1986). This court is persuaded that the motion to quash should be denied because the attorney-client privilege does not cover documents relevant to legal representation procured in furtherance of fraud.  Further. these documents are essential to the court's determination of whether fraud was, in fact, perpetrated.

Wingate, J. *Infinity Services of Miss., LLC and Rick Myers vs. Liberty Mutual Insurance Co., et. al.,* Case No. 3:04cv392-HTW-JCS, *Order,* p. 2, September 26, 2005.

Likewise, this Court also finds that the attorney-client privilege does not exist as to legal representation procured in furtherance of fraud.  The Court is of the opinion that at this stage of the proceedings. Liberty Mutual has produced enough proof to raise a legitimate question at to the possibility of fraud on the part of the Debtors.  Therefore, the attorney-client privilege does not exist

as to the documents and testimony requested by Liberty Mutual.  As Judge Wingate stated, "these documents are essential to the court's determination of whether fraud was, in fact, perpetrated.  *Id.*

## CONCLUSION

When information is disclosed by a debtor to his bankruptcy attorney for the purpose of preparing and assembling the schedules and supporting documents, there is no reasonable expectation that the attorney will keep the information confidential because it will be disclosed on documents publically filed with the bankruptcy court.  Therefore, the attorney-client privilege does not arise.

Further even if the privilege existed, once Mr. Myer raised the advice of his attorney as part of his defense, he waived the attorney-client privilege.  In addition, the attorney-client privilege does not exist if the legal representation was used in order to commit a crime or fraud.

Therefore, the attorney-client privilege is not a bar to prevent Liberty Mutual from obtaining the information it is seeking from the Debtors.

A separate order will be entered.

This the 31st day of January, 2008.

EDWARD ELLINGTON
UNITED STATES BANKRUPTCY JUDGE