## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                                          **CHAPTER 7**
**RICK MYERS**                                                    **CASE NO. 0053489EE**
**TINA MYERS**
**d/b/a P & L PROPERTIES**
**d/b/a EXPRESS PERSONNEL**

Hon. Derek A. Henderson                                    Attorneys for Debtors
111 East Capitol Street, Suite 455
Jackson, MS  39201

Hon. Michael T. Jaques
240 Trace Colony
Ridgeland, MS  39157

Hon. Kimberly R. Lentz                                          Chapter 7 Trustee
Post Office Box 927
Gulfport,  MS 39502

Hon. William J. Little, Jr.                             Attorney for Chapter 7 Trustee
Post Office Box 927
Gulfport,  MS 39502

Hon. Robert Alan Byrd                     Attorneys for Liberty Mutual Insurance Co.,
Post Office Box 1939
Biloxi, MS  39533

Hon. Clifford K (Ford) Bailey, III
Hon. Kelly D. Simpkins
300 Concourse Boulevard, Suite 200
Ridgeland, MS  39201

Hon. Edward J. Currie, Jr                 Attorneys for Fox-Everett Underwriters, LTD.
Post Office Box 750                                                     and Steve Lee
Jackson, MS  39205-0750

Hon. Thomas E. Schwab
1515 Poydras Street, Suite 2350
New Orleans, LA  70112

Edward Ellington, Judge

**FINDINGS OF FACT
AND CONCLUSIONS OF LAW ON THE
TRUSTEE'S *MOTION TO APPROVE COMPROMISE***

**THIS MATTER** came before the Court on the *Motion to Approve Compromise* filed by the Chapter 7 Trustee, Kimberly R. Lentz, and the *Response to Trustee's Motion to Compromise and Motion of Liberty Mutual Insurance Company and Fox-Everett Underwriters, LTD., to Compromise.* After the conclusion of the trial on the above pleadings, the Court instructed the parties to submit briefs. After considering the parties' oral arguments and the exhibits at the trial and the post-trial briefs, the Court finds that the *Motion to Approve Compromise* filed by the Chapter 7 Trustee, Kimberly R. Lentz, is not well taken and should be denied. The Court further finds that the cournter-offer contained in the *Response to Trustee's Motion to Compromise and Motion of Liberty Mutual Insurance Company and Fox-Everett Underwriters, LTD., to Compromise* is not well taken and should be denied.

**FINDINGS OF FACT**

The matter currently before the Court is one in a long line of matters litigated between Rick and Tina Myers (Debtors), Liberty Mutual Insurance Company, Fox-Everett Underwriters, LTD., Steve Lee and the Chapter 7 Trustee, Kimberly R. Lentz (Trustee). In order to put the issues before the Court in context, it is necessary to give a rather detailed background of what has occurred between the parties up to this time.

On August 17, 2000, the Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code styled *Rick and Tina Myers dba P & L Properties dba Express Personnel* in the Gulfport Divisional Office of the Southern District of Mississippi. The case was assigned to the Honorable Edward R. Gaines. P & L Properties (P&L) was a limited liability corporation wholly

owned by Rick Myers.  P&L provided temporary employees to businesses and operated through a franchise with Express Services, Inc.  On March 2, 2001, the Debtors converted their case to one under Chapter 7 of the United States Bankruptcy Code.

On October 25, 2001, an *Order Approving Trustee's Report of No Distribution* was entered in which the Chapter 7 Trustee, C. Thomas Anderson, certified that there were no assets to administer for the benefit of the creditors of the estate.[1]  The Debtors received their *Discharge of Debtor* also on October 25, 2001, and their case was closed on October 29, 2001.

On October 21, 2002, the Debtor, Rick Myers, and Infinity Services of Mississippi, LLC (collectively, Myers) filed a complaint against Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd., and Steve Lee (collectively, Liberty Mutual) in the Circuit Court of the First Judicial District of Hinds County, Mississippi (State Court Litigation).  Infinity Services of Mississippi, LLC (Infinity) was a limited liability company established by Rick Myers on or around March 30, 2001.  Infinity was a labor subcontracting company which supplied skilled labor to industrial and marine contractors both inside and outside of Mississippi.  In the lawsuit, Myers basically contends that Liberty Mutual failed to procure and to provide Infinity with workers' compensation insurance coverage and that Myers relied upon false representations made by Steve Lee and Fox-Everett during the solicitation and sale of the policy for workers' compensation insurance.  As a result of the actions of Liberty Mutual, Myers alleges that Infinity eventually went out of business.  Myers asserts various causes of action, including breach of contract, gross negligence, breach of duty of good faith and fair dealing, and emotional distress along with several

---

[1]C. Thomas Anderson was appointed the Chapter 7 Trustee in 2001 when the Debtors converted their case from a Chapter 13 to a Chapter 7.  When the case was reopened in 2004, Kimberly R. Lentz was appointed the Chapter 7 Trustee.

other counts.

On May 25, 2004, Liberty Mutual removed the State Court Litigation to the United States District Court for the Southern District of Mississippi[2] alleging that the causes of action were property of the Myers' bankruptcy estate (District Court Action).  In support of its contention that the District Court Action is property of the Debtors' bankruptcy estate, Liberty Mutual asserts that in late 2000, Myers requested that Steve Lee, an agent for Fox-Everett, assist him in procuring a workers' compensation policy to cover workers subject to the U. S. Longshore & Harbor Workers' Compensation Act.[3]  Mr. Lee obtained coverage for Myers through the Mississippi Workers' Compensation Assigned Risk Plan.  The assigned risk plan was administered by Compensation Insurance Services (CIS).  Once CIS approved P & L's application, it assigned Liberty Mutual Insurance Company as the plan's servicing carrier for the policy.

According to Liberty Mutual, as the servicing carrier, Liberty Mutual "issued and administered the policy and any claims arising thereunder in accordance with the guidelines of the plan and the National Council on Compensation Insurance ("NCCI"). . . .Liberty subsequently issued its policy. . .to P & L for the policy period of 12/16/00-12/16/01. . . .Mississippi was the only state listed in the USL&H endorsement."[4]

Liberty Mutual alleges that in January of 2001, Myers began "surreptitiously transferring P&L's cash, accounts receivable, business contacts and other assets to Infinity Services and thereby

---

[2]The case was assigned Civil Action No. 3:04-cv-392-HTW-JCS.

[3]33 U. S. C. §  901, et. seq.

[4]*Joint Memorandum of Defendants Liberty Mutual Insurance Company, Fox-Everett Underwriters, LTD. and Steve Lee in Opposition to Trustee's Motion to Compromise and in Support of Defendants' Alternative Proposal*, p. 3 (October 21, 2009).

depriving his creditors of the only realistic chance they had of recovering at least some portion of their claims against Myers *(sic)* bankruptcy estate. . . .In the midst of these transactions, on March 2, 2001, he converted his bankruptcy to a Chapter 7." *Id*. at p. 4.  In light of the actions of Myers, Liberty Mutual asserts that the Debtors' conversion to a Chapter 7 was in bad faith, that Infinity is a successor in interest of P &L, and therefore, the District Court Action is property of the Debtors' bankruptcy estate.

The Debtors filed a motion to reopen their Chapter 7 bankruptcy case on September 23, 2004. On October 1, 2004, an order was entered reopening their case.  Kimberly R. Lentz was appointed the Chapter 7 Trustee.

On March 22, 2005, Judge Henry T. Wingate entered an order in the District Court Action denying Myers' motion to remand.  In denying the motion to remand, Judge Wingate addressed the issue of whether the lawsuit was property of the Debtors' bankruptcy estate.  Judge Wingate stated that "this court is convinced at this stage that defendants have produced enough proof to show that Myers' claims in the lawsuit *sub judice* arose prior to and during Myers' bankruptcy proceedings."[5] Based on the same reasoning, Judge Wingate also denied Myers' motion to abstain on March 24, 2005.

The District Court Action remains pending before Judge Wingate; however, on October 6, 2005, all discovery was stayed in the District Court Action pending resolution in this Court of the issue of whether the cause of action is property of the Debtors' bankruptcy estate.

Liberty Mutual has filed two proof of claims in the Debtors' bankruptcy case.  On May 2, 2005, Liberty Mutual filed a claim in the amount of $977,753.46 (claim #1).  The stated basis for

---

[5]Wingate, J. *Infinity Services of Miss., LLC and Rick Myers vs. Liberty Mutual Insurance Co., et. al.,* Case No. 3:04cv392-HTW-JCS, *Order*, p. 6, March 21, 2005.

this claim is "assigned risk premium." On April 23, 2007, Liberty filed a second proof of claim in the amount of $977,798.46 (claim #24). The stated basis for this claim is "money loaned."

At some point after the bankruptcy case was reopened, the Trustee reached an agreement with Liberty Mutual to settle the District Court Action. On May 4, 2005, the Trustee filed *Trustee's Motion for Authority to Compromise* (Liberty Mutual Settlement). The Liberty Mutual Settlement entailed Liberty Mutual paying the Trustee $60,000 in exchange for the Trustee dismissing the District Court Action. However, this settlement was contingent upon a finding that the Debtors converted their Chapter 13 case in bad faith. The Debtors objected to this settlement.[6]

Subsequently on August 25, 2006, the Trustee filed an adversary proceeding (Trustee's Adversary Proceeding) against the Debtors.[7] The complaint contains two counts. In Count I, the Trustee prayed for a monetary judgment against the Debtors for the $20,000 the Debtors received shortly after the conversion of their case to a Chapter 7 for the sale of a franchise agreement. The Trustee alleged that on *Schedule B - Personal Property*, the Debtors listed the value of P&L and the franchise of Express Personnel Services as zero. However, less than two weeks after the Debtors converted their case to a Chapter 7, the Debtors received $20,000 for the sale of the Express Services franchise back to Express Services. In Count II the Trustee alleged that Infinity was a mere continuation of the business of P&L...Infinity had the exact same employees, same address and phone numbers and the same insurance coverage as P&L. The Trustee sought a declaratory judgment that Infinity was the successor in interest of P&L, and therefore, all of the assets of Infinity

---

[6]As noted later in the *Finding of Facts*, the Liberty Mutual Settlement was withdrawn by an *Agreed Order* on September 11, 2009.

[7]Styled: *Kimberly R. Lentz, Trustee for the Bankruptcy Estate of Rick Myers and Tina Myers d/b/a P & L Properties d/b/a Express Personnel v. Rick and Tina Myers;* Adversary No. 06-5064.

6

were property of the Debtors' bankruptcy estate.

On May 30, 2007, Judge Gaines recused himself from hearing the Trustee's Adversary. Thereafter, the Trustee's Adversary Proceeding was transferred to the Jackson Divisional Office of the Southern District of Mississippi. The Trustee's Adversary Proceeding was assigned to the undersigned judge.

The Trustee and the Debtors agreed to settle the Trustee's Adversary Proceeding, and on August 22, 2007, the Trustee filed *Motion to Approve Compromise* (Debtors' Adversary Settlement). In the Debtors' Adversary Settlement, the basic terms are that the Debtors agreed to pay the Trustee a sum of $20,000 and that the Trustee agreed to dismiss Count I and II of the adversary proceeding and to withdraw the Liberty Mutual Settlement. Liberty Mutual objected to the Debtors' Adversary Settlement and stated that it was willing to purchase from the Trustee the causes of action against the Debtors.

The Debtors' Adversary Settlement was cross-indexed from the adversary and into the Debtors' bankruptcy file. On October 29, 2007, Judge Gaines also recused himself from hearing the matters in the main bankruptcy case. The main bankruptcy case was assigned to the undersigned judge. At that point, the Debtors' main bankruptcy case and related adversary proceedings were all pending before this Court.

On March 17, 2008, a *Consent Judgment*[8] was entered in the Trustee's Adversary Proceeding in which the Trustee agreed to dismiss Count I of the complaint. The judgment further held that Count II was dismissed but that no adjudication was being made as to whether Infinity Services, LLC

---

[8]A *Corrected Consent Judgment* was entered on October 23, 2008, to correct the docket number for the Liberty Mutual Settlement listed in the order–from #89 to #79.

is property of the Debtors' bankruptcy estate[9].

The Court set January 15, 2009, as the date of the trial on the Liberty Mutual Settlement. At the pretrial conference, the parties agreed to mediation before the Honorable David W. Houston, III, United States Bankruptcy Judge for the Northern District of Mississippi. The mediation did not result in the parties reaching a global settlement of all of the pending matters. However, Myers and the Trustee reached an agreement to resolve the dispute over whether the causes of action in the District Court Action were property of the Debtors' bankruptcy estate.

On March 25, 2009, the Trustee filed the current *Motion to Approve Compromise* (Myers' Settlement). In the Myers' Settlement, the Debtors and the Trustee agreed to the following terms:

> (1) The Trustee shall employ Michael T. Jaques. . .as special counsel to pursue the District Court Action on behalf of the bankruptcy estate and (Myers). Special counsel shall also be employed to litigate and object to the Liberty Mutual Proof of Claim in the bankruptcy case which is based upon the allegations asserted in the Liberty Mutual counterclaim.
>
> (2) Any net recovery arising out of the District Court Action (net meaning after legal fees and expenses approved by the Bankruptcy Court and paid to Special Counsel by the Trustee) shall be distributed by the Trustee as follows:
>
>> a. The first $125,000 will be retained by the Trustee for the benefit of the bankruptcy estate; and
>>
>> b. The next $350,000.00 shall be evenly split between the Trustee and the Debtors (The Trustee will be entitled to 50% and the [Myers] shall be entitled to 50% of the next $350,000.00 in recovery).
>>
>> c. (Myers) shall be entitled to all of any net recovery that exceeds $475,000.00.
>>
>> d. (Myers) will not enter into any settlement with (Liberty Mutual) without the Trustee's prior consent.

---

[9]The Debtors' Adversary Settlement contemplated the Debtors paying the Trustee $20,000 in exchange for the settlement of the adversary. The Trustee did receive a payment from the Debtors in the amount of $20,000, however, neither *Consent Judgment* mentions the $20,000 payment.

(3)   The remaining pleadings and motions related to the Trustee's Motion to Compromise, including the pending summary judgment motion will be withdrawn upon entry of an Order approving this Motion.

*Motion to Approve Compromise*, ¶ 14 (March 25, 2009)[10].

The Trustee asserts that excluding the claim of Liberty Mutual, the settlement will at a minimum yield a distribution to unsecured creditors of approximately 75%. *Id.* at 4.  The Trustee further states that she "is of the opinion that the settlement is fair and equitable and is in the best interest of the Debtors, the bankruptcy estate, all creditors and parties-in-interest and should be approved by the Court." *Id.* at ¶ 16.

On May 4, 2009, the *Response to Trustee's Motion to Compromise and Motion of Liberty Mutual Insurance Company and Fox-Everett Underwriters, LTD., to Compromise* (Response) was filed.  In its Response, Liberty Mutual asserts that the Trustee has miscalculated the amount necessary to satisfy the unsecured creditors.  Based upon its calculations, Liberty Mutual and Fox-Everett propose a counter-offer to the Trustee (Liberty Mutual Counter-Offer):

> Based upon a review of the Court's claims docket, the amount necessary to satisfy the unsecured claims is approximately $131,083.92. . . .Adding an estimated $10,000 in § 326(a) administrative fees to the Trustee and $5,000 in attorneys fees, the total amount necessary to make the unsecured creditors whole and pay the other necessary fees owed to the Trustee is approximately $146,083.92.

> Based on the above figures, Liberty and Fox-Everett hereby jointly offer to pay the amount necessary to satisfy 100% of the allowed unsecured claims, plus any § 326(a) administrative fees and attorney's fees owed to the Trustee, up to a total of $200,000. The payment of this amount is conditioned on the receipt by Liberty and Fox-Everett of a full, absolute and unconditional general release and dismissal with prejudice, of all claims which have been alleged, or which could have been alleged, against Liberty and Fox-Everett, including Fox-Everett's former employee, Steve Lee, in civil action no. 3:04cv392-HTW-JCS.

> In addition to the aforesaid payment, Liberty will withdraw and dismiss its Complaint

_____

[10]In the motion, there are two paragraphs numbered 14.  The quote is from the second paragraph 14 found on the 5th and 6th pages of the unnumbered document.

pending as adversary proceeding No. 07-05011,[11] and its proof of claim for unpaid premiums.

*Response to Trustee's Motion to Compromise and Motion of Liberty Mutual Insurance Company and Fox-Everett Underwriters, LTD., to Compromise*, pp. 3-4 (May 4, 2009).

A trial on the Myers' Settlement and the Liberty Mutual Counter-Offer was held on August 12, 2009.  At the conclusion of the trial, the Court took the matter under advisement and instructed the parties to submit briefs supporting their respective positions.

On September 11, 2009, the parties entered into an *Agreed Order* in which the Trustee withdrew the Liberty Mutual Settlement.  Therefore, the only settlement offers currently pending in this case is the Myers' Settlement and the Liberty Mutual Counter-Offer, both of which are the subject of this opinion.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

### II.

### A.

"One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among themselves."  *In re Mirant Corp.,* 334 B.R. 800, 811 (Bankr. N.D.Tex. 2005)(citations omitted).  "Compromises are favored in bankruptcy.  It is an unusual case of any size in which there is not some litigation between the representative of the estate

---

[11]On March 20, 2007, Liberty Mutual filed an adversary proceeding objecting to the dischargeability of their debt pursuant to § 523(a)(2)(A).

10

and an adverse party.  Much of that litigation is settled."  9 <u>Collier on Bankruptcy</u> ¶ 9019.01 (Alan

N. Resnick & Henry J. Sommer eds., 15th ed. rev.)(footnote omitted).  Once a settlement is reached

between the parties, the parties must seek approval of the settlement by the bankruptcy court.

Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), "[o]n motion of the trustee and

after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bank. P.

9010(a).[12]  However, the Court should only approve the settlement when the settlement is "fair and

equitable and in the best interest of the estate."  *Connecticut General Life Insurance Co. v. United*

*Companies Financial Corp. (In re Foster Mortgage Corp.),* 68 F.3d 914, 917 (5th Cir. 1995)

(citations omitted).

In the case of *In re Jackson Brewing Company,*[13] the Court of Appeals for the Fifth Circuit

established a three part test for determining whether a settlement is fair, equitable and in the best

interest of the estate.  The Fifth Circuit held that a court should consider:

> (1).  The probability of success in the litigation, with due consideration for the uncertainty in fact and law,
>
> (2).  The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and
>
> (3).  All other factors bearing on the wisdom of the compromise.

*In re Jackson Brewing*, 624 F.2d at 602 (citations omitted).

Under the third, and so called catch-all provision, the Fifth Circuit added two additional

factors that a court should consider when determining whether to approve a settlement:

> First, the court should consider the best interests of the creditors, "with proper deference to their reasonable views."  *Foster Mortgage Corp.,* 68 F.3d at 917.

---

[12]Hereinafter, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifically noted otherwise.

[13]*Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599 (5th Cir. 1980).

Second, the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* at 918 (internal citations omitted).

*Official Committee of Unsecured Creditors v. Cajun Electric Power Cooperative, Inc. (In re Cajun Electric Power Cooperative, Inc.),* 119 F.3d 349, 356 (5th Cir. 1997).

"A decision to accept or to reject a compromise or settlement is within the sound discretion of the Court. . . .Essential to the process of evaluating proposed settlements, then, 'is the need to compare the terms of the compromise with the likely rewards of litigation.'" *In re Idearc Inc.,* 2009 WL 5205346, *39 (Bankr. N.D.Tex. 2009)(citations omitted).

The Court will address each pending settlement separately.

## B.
## MYERS' SETTLEMENT OFFER

As stated previously, the Myers' Settlement is a tiered payment plan based on any recovery that may be obtained by Myers in the District Court Action against Liberty Mutual. The Trustee contends that the Myers' Settlement "is fair and equitable and in the best interest of the Debtors, the bankruptcy estate, all creditors and parties-in-interest and should be approved."[14] Liberty Mutual opposes the settlement as being contingent and uncertain and not in the best interests of the bankruptcy estate and creditors.

**1.** *The Probability of Success in the Litigation.* "With respect to the first factor, it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. 'The judge need only appraise himself of the relevant facts and law so that he can make an informed and intelligent decision. . . .'" *Cajun Electric,* 119 F.3d at 356 (citation omitted).

In her brief, the Trustee stated that "(t)he Trustee's claims of estate ownership of any causes

---

[14]*Motion to Approve Compromise*, ¶ 16 (March 25, 2009).

of action are legally questionable, and compromise is appropriate. Under the facts present and applicable law, the claims asserted by Infinity and the Debtors may be found not to be property of the bankruptcy estate. If such a finding occurred, the bankruptcy estate would receive nothing."[15]

At the trial on the Myers' Settlement, the Trustee testified that one reason that she entered into the Myers' Settlement was that "Liberty Mutual is going to want a full release to get rid of the whole lawsuit, and if just one of those (counts) is considered to be not property of the estate, then we can't settle with Liberty Mutual. My only option is to settle this issue of what is property of the estate in order to get this thing moving along and to get the whole underlying lawsuit resolved." *Transcript,* p. 35. Therefore, the Trustee stated that she had elected to enter into the Myers' Settlement with the Debtors.

When being questioned by her attorney, the Trustee further stated that in deciding to settle with the Debtors, she based her decision on the fact that she believed that Myers had a good chance to succeed in the District Court Action:

> Q. Okay. And can you tell the Court what you took into consideration in making that decision other than the likelihood of success on the merits, . . . ?
>
> A. Yes. As far as in addition to that contingency, the unlikeliness of being able to have every cause of action being property of the estate, I also looked at the underlying merits of the lawsuit, and I listened to Mr. Jaques[16] speak, I have listened to – I have read the pleadings, I have reviewed all of the papers in the file. I guess, most of all, I have considered the actions of the attorneys on both sides over the course of four years, and it just – Liberty Mutual and Fox-Everett have spent a lot of time, a lot of attorneys' fees. They have five attorneys here, and some law clerks apparently, just here today. They have spent a lot of money and time trying to keep this thing from going to trial. And I believe that, in and of itself, is evidence that they are very worried about this claim. Likewise, Mr. Jaques and the other plaintiffs' lawyers have continued to spend time over the past four years. They haven't been

---

[15]*Debtors' and Trustee's Memorandum in Support of Trustee's Motion to Approve Compromise Settlement,* p. 7 (October 21, 2009).

[16]Mr. Jaques is one of the attorneys representing Myers in the District Court Action.

paid a dime, but they have persevered and they have continued to insist that they want to go forward with this lawsuit, and I believe that in and of itself is evidence that this is a very good claim against the defendants in the underlying lawsuit.

*Transcript,* p. 36.

Upon cross-examination by Liberty Mutual's attorney, the Trustee again stated that it was her opinion that Myers had a better probability of succeeding in the District Court Action than she would in litigation against the Debtors over property of the estate/bad faith conversion. However, the Trustee admitted that she had not reviewed any of the depositions, summaries of depositions, remand related briefs, affidavits, opinions of experts or any documents produced by Myers or Liberty Mutual,[17] many of which Liberty Mutual contends clearly supports its position that the District Court Action is property of the Debtors' estate. The Trustee also agreed with counsel for Liberty Mutual that there was a chance that there could be a recovery by both Liberty Mutual and Myers in the District Court Action,[18] and that if Liberty Mutual did prevail on its counterclaim, Myers would have to recover a sizeable judgment before there would be any money for the benefit of the estate and unsecured creditors.[19]

The Court does not believe that it has been apprised of the relevant facts and law in order to make an "informed and intelligent decision"[20] as to the probability of success of the Trustee in the litigation. The Trustee testified that she now believes that Infinity is not a successor in interest to P&L, and that therefore, the District Court Action is not property of the bankruptcy estate. However, the Trustee did not back up this testimony with any relevant facts, documents, or law. Indeed, the

---

[17]*Transcript,* pp. 62-63.

[18]*Transcript,* p. 51.

[19]*Transcript,* p. 51-52.

[20]*Cajun Electric*, 119 F.3d at 356.

14

Trustee admitted that she had reviewed the pleadings filed in the District Court Action, but she stated that she had not reviewed any of the transcripts from depositions, any affidavits, any reports from experts or any of the documents produced by the Debtors and Liberty Mutual in the District Court Action. In its briefs, Liberty Mutual asserts that the depositions, affidavits and documents clearly show that Infinity was the successor in fact of P&L, and therefore, the probability of the Trustee succeeding in the property of the estate/bad faith conversion litigation is very great. It appears that in reaching the conclusion that she would not prevail in litigation on whether the District Court Action is property of the estate, the Trustee based her conclusion on the number of attorneys involved and the amount of time that has been spent by the attorneys rather than on the relevant facts and law.

In addition to not being apprised of the relevant facts and law, the Court finds that the Myers' Settlement is too contingent for the Court to approve. The only possibility for the Trustee to recover any money for the estate would be if, and only if, Myers prevails against Liberty Mutual in the District Court Action. And if Liberty Mutual succeeded on its counterclaim for unpaid premiums, Myers would have to recover in an amount excess of the unpaid premiums, any interest and costs before the Trustee would receive any money for the benefit of the estate.

**2.** *Complexity and Expense of Litigation.* At the trial, the Trustee testified that she entered into the Myers' Settlement rather than litigate the issue of whether the District Court Action was property of the bankruptcy estate because the property of the estate/bad faith conversion issue was complicated and expensive and with appeals, would take many years. The Trustee further stated that she believed the litigation of the property of the estate/bad faith conversion issue would be protracted litigation that would deplete the resources of the bankruptcy estate.

However, only upon cross-examination did the Trustee acknowledge that the District Court

15

Action would also involve complex issues and would be expensive. The Trustee also acknowledged that like the property of the estate/bad faith conversion issue, the final resolution of the District Court Action would take years.

As for the Trustee's contention that litigating the property of the estate/bad faith conversion issue would deplete the estate's assets, Liberty Mutual has offered a solution for the Trustee:

> If there is no money in the estate, this problem can be easily avoided by appointing either (Myers') counsel or (Liberty Mutual's) counsel as special counsel to litigate this issue on behalf of the Trustee pursuant to 11 U. S. C. §330. Which set of attorneys would be retained would depend on the position ultimately taken by the Trustee. The point is one or the other will have the same interests as the Trustee and the issue can be litigated without any expense to the Trustee.

*Joint Response of Defendants Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd. and Steve Lee to Trustee's Memorandum and Motion to Compromise and in Support of Defendants' Alternative Proposal,* ¶ 5, p. 7 (November 4, 2009). Therefore, there are options available to the Trustee to avoid depleting the assets in the bankruptcy estate.

The Court does not find the Trustee's assertion that the property of the estate/bad faith conversion litigation would be protracted litigation to be a factor which weighs in favor of approval of the Myers' Settlement. Even if the Court approved the Myers' Settlement, it will be many years before the District Court Action comes to final resolution and the Trustee possibly receiving money for the benefit of the estate. Based upon the history of the litigation between these parties, the Court finds that the final resolution of either the property of the estate/bad faith conversion litigation or the District Court Action will take many years.

**3.** *All Other Factors and the Best Interests/Wishes of the Creditors.*

**i.**

Liberty Mutual is the only creditor which objected to the Myers' Settlement. In a more conventional case, the Court would give more weight to the views of a creditor who opposed a

settlement, however, this case is far from conventional. Other than the Trustee, the Debtors and Liberty Mutual have been the only parties to have actively participated in the bankruptcy proceedings, and each for totally opposite reasons. For the past four years, the Debtors have been doing what they can to prevent the litigation of the issue of bad faith conversion and of whether the District Court Action is property of the estate so that they alone can proceed with their claims against Liberty Mutual in the district court. Whereas Liberty Mutual has been trying to get the Court to litigate the issue of bad faith conversion and of whether the District Court Action is property of the estate so that Liberty Mutual can settle the District Court Action with the Trustee.

The Court finds that in the specific facts of this case, the views of Liberty Mutual should not be a major factor in determining whether the Myers' Settlement is a fair and equitable settlement and in the best interests of the bankruptcy estate. Even if the Court were to give weight to the views of Liberty Mutual, the Fifth Circuit has held that "the desires of the creditors are not binding." *In re Foster,* 68 F.3d at 917.

### ii.

In the Trustee's *Motion to Approve Compromise*, the Trustee states that she "is of the opinion that the settlement is fair and equitable and is in the best interest of the Debtors, the bankruptcy estate, all creditors and parties-in-interest and should be approved by the Court." *Motion to Approve Compromise,* ¶ 16 (March 25, 2009).

During her testimony at the trial and in her post-trial briefs, the Trustee again stated that when entering into the Myers' Settlement she gave deference to the interests of the Debtors and a possible surplus which the Debtors may receive as a result of the Myers' Settlement.[21] However, in

---

[21]In light of the fact that in closing arguments (*Transcript,* p. 103) the attorney for the Trustee acknowledged that the Debtors' failure to disclose the value of P&L and their failure to disclose that they had negotiated and then received $20,000 for the Express Services franchise constituted

her post-trial briefs, the Trustee does not cite any authority to support her position that the interests and views of the Debtors are a factor that the Trustee should have considered when entering into the Myers' Settlement.

The Court has not been provided nor is the Court aware of any authority to support the Trustee's position that the interests of the Debtors are a factor that she should have considered when deciding whether to enter into the Myers' Settlement. As stated previously, the Fifth Circuit held in *Foster Mortgage* that a court should consider the best interests of <u>creditors</u>[22] when determining whether a settlement is fair and equitable and in the best interests of the bankruptcy estate. Therefore, the Court finds that the interests of the Debtors are not a factor that the Court will consider when deciding whether the Myers' Settlement is fair and equitable and in the best interests of the estate.

**4.** *Arms Length Transaction.* Liberty Mutual has not stated that the Myers' Settlement was not the result of an arms-length transaction. Nor does Liberty Mutual raise the argument that the Myers' Settlement was reached as a result of fraud or collusion.

Having considered all of the factors established by the Fifth Circuit, the Court finds that the Myers' Settlement is a contingent settlement that is not fair and equitable nor in the best interests of the bankruptcy estate. Therefore, the Myers' Settlement should not be approved.

## C.
## LIBERTY MUTUAL COUNTER-OFFER

Briefly stated, the Liberty Mutual Counter-Offer entails Liberty Mutual paying to the Trustee a maximum of $200,000, dismissing its adversary proceeding and withdrawing its proof of claim.

---

bankruptcy fraud, the Court finds the fact that the Trustee gave any deference to the interests and views of the Debtors troubling.

[22]*Foster Mortgage Corp.,* 68 F.3d at 917.

Liberty Mutual contends that its counter-offer is fair and reasonable and in the best interests of the bankruptcy estate, and that consequently, the Court should not approve the Myers' Settlement and should approve its counter-offer. The Trustee contends that the Liberty Mutual Counter-Offer is contingent upon Liberty Mutual receiving a release, and therefore, it is not fair and equitable nor in the best interests of the bankruptcy estate.

The Court finds that like the Myers' Settlement, based upon the facts and evidence presented to the Court, the Court cannot make a well-informed decision that the Liberty Mutual Counter-Offer is a fair and equitable settlement.

Like the Myers' Settlement, the Liberty Mutual Counter-Offer is a contingent settlement offer. Liberty Mutual's offer is contingent upon it receiving a full and complete release of all claims involved in the District Court Action. However, until the property of the estate/bad faith conversion issue is litigated, the Trustee cannot give Liberty Mutual a release. Therefore, the Court cannot approve the Liberty Mutual Counter-Offer as it is contingent and is not in the best interests of the bankruptcy estate.

## CONCLUSION

This case has involved numerous offers of settlement, discovery disputes, motions and adversaries. Currently, the Court has before it the Myers' Settlement and the counter-offer of Liberty Mutual. In order to approve a settlement, the Court must find that a settlement is a "fair and equitable settlement and in the best interests of the estate." *In re Foster,* 68 F.3d at 917 (citations omitted).

The Myers' Settlement is a settlement that is totally contingent upon Myers obtaining a sizeable judgment in the District Court Action. Based upon the evidence presented to the Court, the Court finds that the Myers' Settlement is not a fair and equitable settlement that is in the best

interests of the bankruptcy estate.

Likewise, the Liberty Mutual Counter-Offer is also contingent. The Court does not find that the evidence presented to the Court proves that the Liberty Mutual Counter-Offer is fair and equitable and in the best interests of the bankruptcy estate. Therefore, the Court cannot approve the Liberty Mutual Counter-Offer as it too is based upon a contingency that cannot be met by the Trustee at this time.

The Court appreciates the Trustee's attempt to resolve what has been a long and litigious battle by entering into the Myers' Settlement. However, neither the Myers' Settlement nor the Liberty Mutual Counter-Offer truly settles anything. With either settlement, the central issue of whether the Debtors converted their Chapter 13 to a Chapter 7 in bad faith and thereby made the District Court Action property of the bankruptcy estate is still pending. Therefore, the Court finds that it is time for the Trustee to take the appropriate action to move the case forward and to have the bad faith conversion/property of the estate issues finally determined.

A separate judgment consistent with this opinion will be entered in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure.

Edward Ellington
United States Bankruptcy Judge
Dated: March 9, 2010