

SO ORDERED,

Judge Edward Ellington
United States Bankruptcy Judge
Date Signed: February 26, 2016

The Order of the Court is set forth below. The docket reflects the date entered.

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| RICK MYERS | CASE NO. 00-53489EE |
| TINA MYERS | |
| d/b/a P & L PROPERTIES | |
| d/b/a EXPRESS PERSONNEL | |

Hon. Derek A. Henderson                                    Attorneys for Debtors
1765-A Lelia Drive, Suite 103
Jackson, MS  39216
derek@derekhendersonlaw.com

Hon. Michael T. Jaques
240 Trace Colony Park, Suite 240
Ridgeland, MS  39157
mjaques@sessumsdallas.com

Hon. Robert Gambrell
101 Ricky D. Britt Boulevard, Suite 3
Oxford, MS  38655
rg@ms-bankruptcy.com

Hon. J. Walter Newman, IV
587 Highland Colony Parkway
Ridgeland, MS  39157
wnewman95@msn.com

Hon. Kimberly R. Lentz                                          Chapter 7 Trustees
The Hewes Building
2505 14th Street, Suite 100
Gulfport,  MS 39501
kim@lentzlittle.com

J. Stephen Smith
1855 Crane Ridge Drive, Suite D
Jackson, MS  39216
trustee1@smithcpafirm.com

Hon. William J. Little, Jr.                        Attorney for Chapter 7 Trustee (Lentz)
The Hewes Building
2505 14th Street, Suite 100
Gulfport,  MS 39501
bill@lentzlittle.com

Hon. Eileen N. Shaffer                          Attorneys for Chapter 7 Trustee (Smith)
Post Office Box 1177
Jackson, MS  39215-1177
enslaw@bellsouth.net

Hon. David W. Baria
544 Main Street
Bay St. Louis, MS  39520
dbaria@baria-williamson.com

Hon. Derek A. Henderson
Hon. Michael T. Jacques

Hon. Robert Alan Byrd                          Attorneys for Liberty Mutual Insurance Co.
Post Office Box 1939
Biloxi, MS  39533
rab@byrdwiser.com

Hon. Clifford K. (Ford) Bailey, III
Hon. Kelly D. Simpkins
300 Concourse Boulevard, Suite 200
Ridgeland, MS  39201
fbailey@wellsmar.com
ksimpkins@wellsmar.com

Hon. Edward J. Currie, Jr.                    Attorneys for Fox-Everett Underwriters, LTD.
Post Office Box 750                                                               and Steve Lee
Jackson, MS  39205-0750
ecurrie@curriejohnson.com

Hon. Thomas E. Schwab
1515 Poydras Street, Suite 2350
New Orleans, LA  70112
tschwab@barkleythompson.com


Edward Ellington, Judge


### FINDINGS OF FACT
### AND CONCLUSIONS OF LAW

#### FORWARD

The matter before the Court involves two different cases which were filed by the same debtor.  The first case was filed in 2000, and is still open.  The second case was filed fourteen (14) years later in 2014.

On August 17, 2000, case number 00-53489EE was filed by *Rick Myers and Tina Myers dba P & L Properties dba Express Personnel* (2000 Case).  Kimberly R. Lentz is the Chapter 7 Trustee for the 2000 Case.

On June 19, 2014, case number 14-50992EE was filed by *Richard A. Myers* (2014 Case). *Rick Myers* and *Richard A. Myers* are the same person.  J. Stephen Smith is the Chapter 7 Trustee for the 2014 Case.

#### INTRODUCTION

**THIS MATTER** came before the Court on the (1) *Amended Joint Motion to Approve*

*Settlement and Compromise* (Dkt. #347)[1] filed by the Chapter 7 Trustee for Case Number 00-53489EE, Kimberly R. Lentz, Liberty Mutual Insurance Company, Fox Everett Underwriters, Ltd. and Steve Lee; (2) *Objection to Amended Joint Motion to Approve Settlement and Compromise* (Dkt. #381) filed by the Chapter 7 Trustee for Case Number 14-50992EE, J. Stephen Smith; (3) *Trustee's Objection to Claims No. 26 & 27* (Dkt. #389) filed by the Chapter 7 Trustee for Case Number 00-53489EE, Kimberly R. Lentz; and (4) *Response to Trustee's Objection to Proofs of Claim Nos. 26 and 27* (Dkt. #391) filed by the Chapter 7 Trustee for Case Number 14-50992EE, J. Stephen Smith.

After the conclusion of the trial on the above pleadings, the Court instructed the parties to submit briefs. After considering the testimony, the parties' oral arguments, the exhibits at the trial, and the post-trial briefs, the Court finds that for the reasons detailed below, the *Amended Joint Motion to Approve Settlement and Compromise* (Dkt. #347) filed by the Chapter 7 Trustee for Case Number 00-53489EE, Kimberly R. Lentz, Liberty Mutual Insurance Company, Fox Everett Underwriters, Ltd., and Steve Lee is well-taken and should be granted and that the *Trustee's Objection to Claims No. 26 & 27* (Dkt. #389) filed by the Chapter 7 Trustee for Case Number 00-53489EE, Kimberly R. Lentz, is well-taken and should be sustained.

## FINDINGS OF FACT

The following recitation of facts is from *In re Myers,* 425 B.R. 296 (Bankr. S.D. Miss. 2010), rendered entered on March 9, 2010, in the Myers' 2000 Case. In the Opinion, the Court denied two separate motions to settle. While all of the facts are not pertinent to the pleadings currently before the Court, they detail what has occurred over the long history of the bankruptcy case filed in 2000. The facts quoted below begin with the commencement of the bankruptcy case and end at the trial

---

[1]Unless noted otherwise, all docket numbers are for Case Number 00-53489EE.

on the then pending settlement offers.  At the conclusion of the quoted facts, the Court will supply

additional findings of facts leading up to the matter currently pending before the Court.

> The matter currently before the Court is one in a long line of matters litigated between Rick and Tina Myers (Debtors), Liberty Mutual Insurance Company, Fox-Everett Underwriters, LTD., Steve Lee and the Chapter 7 Trustee, Kimberly R. Lentz (Trustee).  In order to put the issues before the Court in context, it is necessary to give a rather detailed background of what has occurred between the parties up to this time.

> On August 17, 2000, the Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code styled *Rick and Tina Myers dba P & L Properties dba Express Personnel* in the Gulfport Divisional Office of the Southern District of Mississippi.  The case was assigned to the Honorable Edward R. Gaines.  P & L Properties (P & L) was a limited liability corporation wholly owned by Rick Myers. P & L provided temporary employees to businesses and operated through a franchise with Express Services, Inc.  On March 2, 2001, the Debtors converted their case to one under Chapter 7 of the United States Bankruptcy Code.

> On October 25, 2001, an *Order Approving Trustee's Report of No Distribution* was entered in which the Chapter 7 Trustee, C. Thomas Anderson, certified that there were no assets to administer for the benefit of the creditors of the estate.[2]  The Debtors received their *Discharge of Debtor* also on October 25, 2001, and their case was closed on October 29, 2001.

> On October 21, 2002, the Debtor, Rick Myers, and Infinity Services of Mississippi, LLC (collectively, Myers) filed a complaint against Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd., and Steve Lee (collectively, Liberty Mutual) in the Circuit Court of the First Judicial District of Hinds County, Mississippi (State Court Litigation).  Infinity Services of Mississippi, LLC (Infinity) was a limited liability company established by Rick Myers on or around March 30, 2001.  Infinity was a labor subcontracting company which supplied skilled labor to industrial and marine contractors both inside and outside of Mississippi.  In the lawsuit, Myers basically contends that Liberty Mutual failed to procure and to provide Infinity with workers' compensation insurance coverage and that Myers relied upon false representations made by Steve Lee and Fox-Everett during the solicitation and sale of the policy for workers' compensation insurance. As a result of the actions of Liberty Mutual, Myers alleges that Infinity eventually went out of

---

[2]C. Thomas Anderson was appointed the Chapter 7 Trustee in 2001 when the Debtors converted their case from a Chapter 13 to a Chapter 7.  When the case was reopened in 2004, Kimberly R. Lentz was appointed the Chapter 7 Trustee.

business. Myers asserts various causes of action, including breach of contract, gross negligence, breach of duty of good faith and fair dealing, and emotional distress along with several other counts.

On May 25, 2004, Liberty Mutual removed the State Court Litigation to the United States District Court for the Southern District of Mississippi[3] alleging that the causes of action were property of the Myers' bankruptcy estate (District Court Action). In support of its contention that the District Court Action is property of the Debtors' bankruptcy estate, Liberty Mutual asserts that in late 2000, Myers requested that Steve Lee, an agent for Fox-Everett, assist him in procuring a workers' compensation policy to cover workers subject to the U. S. Longshore & Harbor Workers' Compensation Act.[4] Mr. Lee obtained coverage for Myers through the Mississippi Workers' Compensation Assigned Risk Plan. The assigned risk plan was administered by Compensation Insurance Services (CIS). Once CIS approved P & L's application, it assigned Liberty Mutual Insurance Company as the plan's servicing carrier for the policy.

According to Liberty Mutual, as the servicing carrier, Liberty Mutual "issued and administered the policy and any claims arising thereunder in accordance with the guidelines of the plan and the National Council on Compensation Insurance ("NCCI"). . . .Liberty subsequently issued its policy. . .to P & L for the policy period of 12/16/00-12/16/01. . . .Mississippi was the only state listed in the USL&H endorsement."[5]

Liberty Mutual alleges that in January of 2001, Myers began "surreptitiously transferring P & L's cash, accounts receivable, business contacts and other assets to Infinity Services and thereby depriving his creditors of the only realistic chance they had of recovering at least some portion of their claims against Myers *(sic)* bankruptcy estate. . . .In the midst of these transactions, on March 2, 2001, he converted his bankruptcy to a Chapter 7." *Id*. at p. 4. In light of the actions of Myers, Liberty Mutual asserts that the Debtors' conversion to a Chapter 7 was in bad faith, that Infinity is a successor in interest of P &L, and therefore, the District Court Action is property of the Debtors' bankruptcy estate.

The Debtors filed a motion to reopen their Chapter 7 bankruptcy case on September 23, 2004. On October 1, 2004, an order was entered reopening their case. Kimberly

---

[3]The case was assigned Civil Action No. 3:04-cv-392-HTW-JCS.

[4]33 U.S.C. § 901, et. seq.

[5]*Joint Memorandum of Defendants Liberty Mutual Insurance Company, Fox-Everett Underwriters, LTD. and Steve Lee in Opposition to Trustee's Motion to Compromise and in Support of Defendants' Alternative Proposal*, p. 3 (October 21, 2009).

R. Lentz was appointed the Chapter 7 Trustee.

On March 22, 2005, Judge Henry T. Wingate entered an order in the District Court Action denying Myers' motion to remand.  In denying the motion to remand, Judge Wingate addressed the issue of whether the lawsuit was property of the Debtors' bankruptcy estate.  Judge Wingate stated that "this court is convinced at this stage that defendants have produced enough proof to show that Myers' claims in the lawsuit *sub judice* arose prior to and during Myers' bankruptcy proceedings."[6] Based on the same reasoning, Judge Wingate also denied Myers' motion to abstain on March 24, 2005.

The District Court Action remains pending before Judge Wingate; however, on October 6, 2005, all discovery was stayed in the District Court Action pending resolution in this Court of the issue of whether the cause of action is property of the Debtors' bankruptcy estate.

Liberty Mutual has filed two proof of claims in the Debtors' bankruptcy case.  On May 2, 2005, Liberty Mutual filed a claim in the amount of $977,753.46 (claim #1).  The stated basis for this claim is "assigned risk premium."  On April 23, 2007, Liberty filed a second proof of claim in the amount of $977,798.46 (claim #24).  The stated basis for this claim is "money loaned."

At some point after the bankruptcy case was reopened, the Trustee reached an agreement with Liberty Mutual to settle the District Court Action.  On May 4, 2005, the Trustee filed *Trustee's Motion for Authority to Compromise* (Liberty Mutual Settlement).  The Liberty Mutual Settlement entailed Liberty Mutual paying the Trustee $60,000 in exchange for the Trustee dismissing the District Court Action.  However, this settlement was contingent upon a finding that the Debtors converted their Chapter 13 case in bad faith.  The Debtors objected to this settlement.[7]

Subsequently on August 25, 2006, the Trustee filed an adversary proceeding (Trustee's Adversary Proceeding) against the Debtors.[8]  The complaint contains two counts.  In Count I, the Trustee prayed for a monetary judgment against the Debtors for the $20,000 the Debtors received shortly after the conversion of their case to a Chapter 7 for the sale of a franchise agreement.  The Trustee alleged that on

---

[6]Wingate, J. *Infinity Services of Miss., LLC and Rick Myers vs. Liberty Mutual Insurance Co., et. al.,* Case No. 3:04-cv-392-HTW-JCS, *Order*, p. 6, March 21, 2005.

[7]As noted later in the *Finding of Facts*, the Liberty Mutual Settlement was withdrawn by an *Agreed Order* on September 11, 2009.

[8]Styled:  *Kimberly R. Lentz, Trustee for the Bankruptcy Estate of Rick Myers and Tina Myers d/b/a P & L Properties d/b/a Express Personnel v. Rick and Tina Myers;* Adv. Case No. 06-5064EE.

*Schedule B - Personal Property*, the Debtors listed the value of P & L and the franchise of Express Personnel Services as zero. However, less than two weeks after the Debtors converted their case to a Chapter 7, the Debtors received $20,000 for the sale of the Express Services franchise back to Express Services. In Count II the Trustee alleged that Infinity was a mere continuation of the business of P & L...Infinity had the exact same employees, same address and phone numbers and the same insurance coverage as P & L. The Trustee sought a declaratory judgment that Infinity was the successor in interest of P & L, and therefore, all of the assets of Infinity were property of the Debtors' bankruptcy estate.

On May 30, 2007, Judge Gaines recused himself from hearing the Trustee's Adversary. Thereafter, the Trustee's Adversary Proceeding was transferred to the Jackson Divisional Office of the Southern District of Mississippi. The Trustee's Adversary Proceeding was assigned to the undersigned judge.

The Trustee and the Debtors agreed to settle the Trustee's Adversary Proceeding, and on August 22, 2007, the Trustee filed *Motion to Approve Compromise* (Debtors' Adversary Settlement). In the Debtors' Adversary Settlement, the basic terms are that the Debtors agreed to pay the Trustee a sum of $20,000 and that the Trustee agreed to dismiss Count I and II of the adversary proceeding and to withdraw the Liberty Mutual Settlement. Liberty Mutual objected to the Debtors' Adversary Settlement and stated that it was willing to purchase from the Trustee the causes of action against the Debtors.

The Debtors' Adversary Settlement was cross-indexed from the adversary and into the Debtors' bankruptcy file. On October 29, 2007, Judge Gaines also recused himself from hearing the matters in the main bankruptcy case. The main bankruptcy case was assigned to the undersigned judge. At that point, the Debtors' main bankruptcy case and related adversary proceedings were all pending before this Court.

On March 17, 2008, a *Consent Judgment*[9] was entered in the Trustee's Adversary Proceeding in which the Trustee agreed to dismiss Count I of the complaint. The judgment further held that Count II was dismissed but that no adjudication was being made as to whether Infinity Services, LLC is property of the Debtors' bankruptcy estate[10].

The Court set January 15, 2009, as the date of the trial on the Liberty Mutual

---

[9]A *Corrected Consent Judgment* was entered on October 23, 2008, to correct the docket number for the Liberty Mutual Settlement listed in the order–from #89 to #79.

[10]The Debtors' Adversary Settlement contemplated the Debtors paying the Trustee $20,000 in exchange for the settlement of the adversary. The Trustee did receive a payment from the Debtors in the amount of $20,000, however, neither *Consent Judgment* mentions the $20,000 payment.

Settlement.  At the pretrial conference, the parties agreed to mediation before the Honorable David W. Houston, III, United States Bankruptcy Judge for the Northern District of Mississippi.  The mediation did not result in the parties reaching a global settlement of all of the pending matters.  However, Myers and the Trustee reached an agreement to resolve the dispute over whether the causes of action in the District Court Action were property of the Debtors' bankruptcy estate.

*Myers,* 425 B.R. at 298-301.

A trial on the Trustee's settlement with the Debtors and the counter-offer of settlement proposed by Liberty Mutual was held on August 12, 2009.  On March 9, 2010, the Court entered its *Findings of Fact and Conclusions of Law on the Trustee's Motion to Approve Compromise* (Dkt. #314) in which it found that neither one of the pending settlement offers was fair and equitable nor were in the best interest of the bankruptcy estate.  In the Opinion, the Court stated "that it is time for the Trustee to take the appropriate action to move the case forward and to have the bad faith conversion/property of the estate issues finally determined." *Id.* at 309.

Heeding the Court's instructions, the Trustee initiated an adversary proceeding on April 6, 2010, seeking an adjudication by the Court of whether the causes of action in the District Court Action were property of the Debtors' bankruptcy estate and whether Infinity was a successor in interest to the Debtors and Express Personnel d/b/a P & L Properties.

After the adversary was filed, the Debtors filed a motion for summary judgment in which they claimed they were entitled to summary judgment on the issue of whether the causes of action in the District Court Action were property of their bankruptcy estate.  On September 1, 2011, the Court entered its Opinion[11] denying the motion for summary judgment based on the ruling of Judge Wingate in March of 2005 that the causes of action accrued prior to the Debtors' conversion to a

---

[11]Memorandum Opinion on the Defendants Rick Myers and Tina Myers d/b/a Express Personnel, d/b/a P & L Properties and Infinity Services of Mississippi, Inc.'s Motion for Summary Judgment, *Lentz v. Rick Myers and Tina Myers, et. al.* (*In re Rick & Tina Myers),* Adv. Case No. 10-5014EE, Adv. Dkt. #48, Sept. 1, 2011.

Chapter 7.

On February 14, 2013, the Court entered its *Memorandum Opinion on the Complaint for Declaratory Judgment* (Adv. Dkt. #77) (Declaratory Judgment Opinion).[12]  In the Declaratory Judgment Opinion, the Court found that the "Debtors' actions show that 'there has been an unfair manipulation of the bankruptcy system to the substantial detriment or disadvantage of creditors,' and therefore, the Debtors converted from a Chapter 13 case to a Chapter 7 case in bad faith."[13]  As a result, the "Debtors' Chapter 7 estate includes all property held by the Debtors at the date of the conversion.  The Debtors used proceeds, products or profits from and of P & L in order to create and then run another entity, Infinity LLC.  Consequently, this 'subsequent property interest is part of the bankruptcy estate.'"[14]  Therefore, the Court held that the causes of action in the District Court Action are property of the Chapter 7 bankruptcy estate.

The Debtors appealed this Court's ruling.  On March 19, 2014,  the Honorable Halil S. Ozerden entered an opinion affirming this Court's ruling.[15]

Subsequently, the Trustee and Liberty Mutual filed an *Amended Joint Motion to Approve Settlement and Compromise* (Dkt. #347) (Joint Settlement).  In the Joint Settlement, the Trustee and Liberty Mutual seek to settle the District Court Action.  The terms of the Joint Settlement are:

> [1.] [Liberty Mutual] . . . agree[s] to pay the bankruptcy estate an amount sufficient to pay all  allowed administrative expense claims, all allowed priority unsecured claims and all allowed general unsecured claims in full, without interest.

---

[12]*Lentz v. Myers (In re Myers),* 486 B.R. 365 (Bankr. S.D. Miss. 2013).

[13]*Id.* at 390 (footnote omitted).

[14]*Id.* (citation omitted).

[15]*Memorandum Opinion and Order Affirming the February 14, 2013, Final Judgment of the United States Bankruptcy Court for the Southern District of Mississippi,* District Court Case No. 1:13-cv-00115-HSO-RHW, Dkt. # 87, March 19, 2014.

[2.]  [Liberty Mutual] shall deliver the sum of $50,000.00 to the Trustee within fourteen (14) days of entry of a Final Order approving this Motion.  After all administrative expense claims have been paid in full, the Trustee shall prepare and deliver to Defendants a proposed distribution to holders of allowed priority and unsecured claims.  Within fourteen (14) days of receipt of the proposed distribution, the Defendants shall deliver to the Trustee the remainder of the settlement funds necessary to pay allowed priority and unsecured creditors in full, without interest.

[3.]  The Trustee agrees to object to the Proofs of Claim filed by CIT (Claim No. 23) and American Express Travel Related Services (Claim No. 25). . . .

[4.]  Liberty Mutual shall withdraw its Proof of Claim No. 1 and its duplicate Proof of Claim No. 24.

[5.]  The Trustee will substitute herself as the real party in interest in the District Court Action and will sign an appropriate order dismissing the [Debtors'] claims in the District Court Action, with prejudice, upon receipt of all of the settlement proceeds. . . .[Liberty Mutual] shall execute an absolute release of the Trustee and the bankruptcy estate.  It is the intention of the parties to fully and finally settle and compromise all of the disputes between the Trustee, Liberty Mutual, Fox Everett and Lee.

[6.]  Notwithstanding anything else contained herein, the total amount payable in settlement proceeds shall not exceed $200,000.00.  The Trustee believes this sum will fully satisfy allowed claims and administrative expenses.

*Amended Joint Motion to Approve Settlement and Compromise,* Dkt. #347, unnumbered pp. 3-4, June 5, 2014.  Under the Joint Settlement, there will not be a surplus, and therefore, the Debtors will not receive a distribution.

In accordance with the Federal Rules of Bankruptcy Procedure, the Trustee noticed out the Joint Settlement (Dkt. #348) on June 5, 2014.  Pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(3),[16] the Trustee gave "the debtor, the trustee, all creditors and indenture trustees"[17] twenty-one (21) days to file an objection to the Joint Settlement.  The twenty-one (21) day time period ran

---

[16]Hereinafter, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifically noted otherwise.

[17]Fed. R. Bankr. P. 2002(a)(3).

on June 29, 2014.[18]

Subsequent to the Joint Settlement being noticed out, Richard A. Myers (Myers) filed a second petition for relief under Chapter 7 of the Bankruptcy Code (Case No. 14-50992EE) (2014 Case) on June 19, 2014.  J. Stephen Smith (Myers II Trustee) was appointed the Chapter 7 Trustee of the 2014 Case.

Both the Debtors and the Myers II Trustee were granted extensions of time to file an objection to the Joint Settlement.  The Debtors did not file an objection to the Joint Settlement.  On August 26, 2014, the Myers II Trustee filed his *Objection to Amended Joint Motion to Approve Settlement and Compromise* (Dkt. #381) (Myers II Trustee Objection).  In his objection, the Myers II Trustee alleges that in the 2014 Case, Myers lists the District Court Action as an asset and claims the value to be $5 million.[19]  Basically, the Myers II Trustee alleges that the "equity" in the District Court Action, that is, the value Myers claims to have in the District Court Litigation over and above the amount of the claims in the 2000 Case, is an asset of the 2014 Case.  Therefore, the Myers II Trustee alleges the Trustee of the 2000 Case (hereinafter, Myers I Trustee) does not have the authority to settle the District Court Action because she has "no authority to settle or compromise that portion of the claim which is property of the bankruptcy estate created by the filing of Case No. 14-50992."[20]  No other objections were filed to the Joint Settlement.

---

[18]The actual twenty-one (21) days ran on June 26, 2014.  The notice was emailed to some parties pursuant to the Court's ECF system and was mailed to all parties on the mailing matrix via the U. S. Mail.  Therefore, pursuant to Rule 9006(f), three (3) days must be added to the time period because the notice was served via the U.S. Mail and via email.  *Oppenhein, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.),* 863 F.2d 393, 395 (5th Cir. 1989)(when the notice is only sent by mail, "there is no need for such compensation, as all parties are theoretically subject to the same delays.")

[19]*Summary of Schedules, Schedule B – Personal Property*, Case No. 1450992EE, Dkt. #3, unnumbered page 6, June 19, 2014.

[20]*Objection to Amended Joint Motion to Approve Settlement and Compromise,* Case No. 00-53489, Dkt. #381, unnumbered page 4 of 6, August 26, 2014.

The Myers II Trustee filed a *Proof of Claim* (Claim #26-1) in the 2000 Case on June 30, 2014. The amount of the claim is stated as *undetermined*. On October 8, 2014, the Myers II Trustee filed a second *Proof of Claim* (Claim #27-1) in the 2000 Case (collectively referred to as Claims). The amount of the claim is $5,000,000.00, and "is based on the value of the lawsuit as listed on Schedule B of the schedules filed in the Bankruptcy Proceeding of Richard A. Myers, Case No. 14-50992-EE."[21]

On October 10, 2014, the Myers I Trustee filed *Trustee's Objection to Claims No. 26 & 27* (Dkt. #389) (Objection to Claims). In the Objection to Claims, the Myers I Trustee objects to the Claims on the ground that the Myers II Trustee has no basis to file the Claims because he is not a creditor of the 2000 Case. Further, the Myers I Trustee asserts that pursuant to this Court's ruling, the District Court Action is property of the 2000 Case and Myers has no ownership interest in the District Court Action. The Myers II Trustee filed his *Response to Trustee's Objection to Proofs of Claim Nos. 26 and 27* (Dkt. #391) (Response) on October 23, 2014. In the Response, the Myers II Trustee asserts that any equity in the District Court Action became property of the bankruptcy estate of the 2014 Case, therefore, the Myers II Trustee has a claim in the 2000 Case.

The Joint Settlement, the Myers II Trustee Objection, Objection to Claims and the Response were set for trial on November 20, 2014. At the conclusion of the trial, the parties were instructed to submit a briefing schedule after they had received the transcript of the trial. The transcript of the trial (Dkt. #399) was filed with the Court on December 9, 2014. On December 16, 2014, the parties submitted their *Order Regarding Post-Trial Briefs* (Dkt. #402). The deadlines in this order, however, were extended four times (Dkt. #405, #409, #414 and #417). The final brief was filed on June 3, 2015, and the matter was taken under advisement by the Court.

---

[21]*Proof of Claim,* Case No. 00-53489EE, Claim #27-1, unnumbered page 3, October 8, 2014.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

### II.  Objection to Proof of Claims

As noted, the Myers II Trustee filed Claims in the 2000 Case.  The amount in the Claims is $5,000,000.00, and "is based on the value of the lawsuit as listed on Schedule B of the schedules filed in the Bankruptcy Proceeding of Richard A. Myers, Case No. 14-50992-EE."[22]  The Myers I Trustee has objected to the Claims alleging in essence that the Myers II Trustee has no standing to file claims in the 2000 Case.

Section 501 of the Bankruptcy Code pertains to the filing of proofs of claim.  Section 501 states that "(a) [a] creditor or an indenture trustee may file a proof of claim."  11 U.S.C. § 501(a).[23]

The Bankruptcy Code defines a *creditor* as:

(10) The term "creditor" means--

> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

>> (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

>> (C) entity that has a community claim.

11 U.S.C. § 101(10).

---

[22]*Proof of Claim,* Case No. 00-53489EE, Claim #27-1, unnumbered page 3, October 8, 2014.

[23]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

An *indenture trustee* "means a trustee under an indenture."  11 U.S.C. § 101(29).  An *indenture* is defined as a "mortgage, deed of trust, or indenture, under which there is outstanding a security, other than a voting-trust certificate, constituting a claim against the debtor, a claim secured by a lien on any of the debtor's property, or an equity security of the debtor."  11 U.S.C. § 101(28).

Section 101(5)(A) defines a *claim* as a "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A).

The Court finds that it is clear that the Myers II Trustee does not fit the definition of an *indenture trustee.*  It is also clear that the Myers II Trustee does not fit the definition of a *creditor* since subsection (B) and (C) clearly do not apply to the Myers II Trustee.  Further, the Myers II Trustee does not have a *claim,* i.e. a right to payment, that arose prior to the commencement of the 2000 Case.

The Court will note that the Myers I Trustee must pay creditors pursuant to the distribution of property schedule found in § 726.  If for some reason, the Myers I Trustee had a surplus of funds after all of the creditors in the 2000 Case had been paid in full, pursuant to § 726(6), the Debtors would be entitled to a surplus.  This surplus would be an asset of the 2014 Case and would be paid over to the Myers II Trustee for the benefit of the creditors in the 2014 Case.  At trial, the Myers I Trustee testified that she has paid a surplus to another Chapter 7 Trustee (Trial Tr. at 115), and the Myers II Trustee testified that he understood that he would be entitled to receive any surplus in the 2000 Case pursuant to the statutory distribution schedule in the Bankruptcy Code.  (Trial Tr. at 145).

As the Myers II Trustee testified, instead of filing a proof of claim, the Myers II Trustee could have sent the Myers I Trustee a letter putting her on notice that Myers had filed another bankruptcy case. (*Id.*).  The Myers I Trustee would have then known to pay any surplus over to the Myers II Trustee.

Considering that the Myers II Trustee is not an indenture trustee, is not a creditor of the 2002 Case, and does not have a claim in the 2000 Case, the Court finds that there was no basis for the Myers II Trustee to file the Claims in the 2000 Case. Therefore, the Myers I Trustee's Objection to Claims should be sustained and the Claims disallowed.

### III.  Motion to Settle

### A.  Standing of the Myers II Trustee

Upon the filing of a bankruptcy case, an estate is created pursuant to § 541. The bankruptcy estate is compromised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In other words, any asset owned by the debtor at the time the petition is filed, vests in the bankruptcy estate.

"Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate. . . . 11 U.S.C. §§ 323, 541(a)(1)."[24] In laymen's terms, upon the creation of the bankruptcy estate, a trustee steps into the shoes of the debtor. Further, unless a trustee abandons an asset to the debtor pursuant to § 554, "'[o]nce an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished.'"[25]

Under the *single estate rule*, it has long been held that the same property cannot be owned by two bankruptcy estates. "The rule is simple and categorical; property 'cannot be an asset of '[two] estates simultaneously.'"  *In re McMahan,* 481 B.R. 901, 912 (Bankr. S.D. Tex. 2012)(citations omitted); *Freshman v. Atkins,* 269 U.S. 121 (1925); *In re Wright,* Case No. 13-10472, 2016 WL 556630, at *11 (Bankr. S.D. Tex. Feb. 11, 2016).

---

[24]*Kane v. Nat'l Union Fire Ins. Co.,* 535 F.3d  380, 385 (5th Cir. 2008)(citation omitted).

[25]*Id.* (citation omitted).

Under the *single estate rule*, as long as the bankruptcy estate of the 2000 Case holds the interest in the District Court Action, the bankruptcy estate of the 2014 Case may not hold the same interest in the District Court Action.  This Court previously held that the Debtors converted from a Chapter 13 case to a Chapter 7 case in bad faith and that Infinity was property of the 2000 Case.[26] On appeal, Judge  Ozerden affirmed this Court's findings and held that "[t]he causes of action asserted in the [District Court Action] accrued prior to conversion of the Debtors' bankruptcy [to a Chapter 7], and the [District Court Action] is therefore property of the bankruptcy estate."[27]

It is therefore very clear that the District Court Action is property of the bankruptcy estate of the 2000 Case and has not been abandoned by the Myers I Trustee.  Consequently, any interest Myers had in the District Court Action became part of the 2000 Case, and  "'all rights held by the debtor in the [District Court Action were] extinguished.'"[28]  Under the *single estate rule*, the District Court Action is property of the bankruptcy estate of the 2000 Case and not the 2014 Case.[29]

Even if the *single estate rule* did not apply, since any rights Myers might have had in the District Court Action were extinguished and the Myers II Trustee can only step into the shoes of Myers, the Myers II Trustee does not have a legal or equitable interest in the District Court Action. Consequently, the Myers II Trustee does not have an interest in the District Court Action, and

---

[26]*Myers,* 486 B.R. at 390.

[27]*Memorandum Opinion and Order Affirming the February 14, 2013, Final Judgment of the United States Bankruptcy Court for the Southern District of Mississippi,* District Court Case No. 1:13-cv-00115-HSO-RHW, Dkt. # 87, p. 27, March 19, 2014.

[28]*Kane,* 535 F.3d  at 385 (citation omitted).

[29]The Court notes that "even under the single estate rule 'there is universal agreement among [courts] that where a debtor files for [bankruptcy relief] and then files [a second petition] before receiving a *discharge* in the original case, that [the second case] is a *nullity.  Turner v. Citizens Nat'l Bank of Hammond (In re Turner),* 207 B.R. 373, 378 (2d Cir. BAP 1997).'"  *McMahan,* 481 B.R. at 912. (citation omitted).  Since the Debtors received their *Discharge of Debtor* (Dkt. #57) in the 2000 Case on October 25, 2001, the 2014 Case is not a *nullity.*

therefore, lacks standing to object to the Joint Settlement, and the Court will not consider the Myers II Trustee Objection.

## B. Should the Joint Settlement Be Approved?

Although the Court will not consider the Myers II Trustee Objection, the Court will exercise its independent duty to determine whether the Joint Settlement satisfies the criteria of Rule 9019.

"One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among themselves." *In re Mirant Corp.,* 334 B.R. 800, 811 (Bankr. N.D. Tex. 2005)(citations omitted). "Compromises are favored in bankruptcy. Many cases involve litigation between the representative of the estate and an adverse party. Much of that litigation is settled. In such situations, the settlement must be approved by the court." 9 Collier on Bankruptcy ¶ 9019.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016)(footnotes omitted). After the settlement is reached, the parties must file a motion to approve the settlement and notice the settlement out pursuant to Rule 2002(a)(3).

Pursuant to Rule 9019(a), "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The Court, however, should only approve the settlement when the settlement is "fair and equitable and in the best interest of the estate." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.),* 68 F.3d 914, 917 (5th Cir. 1995) (citations omitted).

In the case of *In re Jackson Brewing Company,*[30] the Court of Appeals for the Fifth Circuit established a three part test for determining whether a settlement is fair, equitable and in the best interest of the estate. The Fifth Circuit held that a court should consider:

(1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,

---

[30] *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599 (5th Cir. 1980).

(2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and

(3) All other factors bearing on the wisdom of the compromise.

*In re Jackson Brewing*, 624 F.2d at 602 (citations omitted).

Under the third, and so called catch-all provision, the Fifth Circuit added two additional factors that a court should consider when determining whether to approve a settlement:

First, the court should consider the best interests of the creditors, "with proper deference to their reasonable views." *Foster Mortgage Corp.,* 68 F.3d at 917. Second, the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* at 918 (internal citations omitted).

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop. Inc.),* 119 F.3d 349, 356 (5th Cir. 1997).

"A decision to accept or to reject a compromise or settlement is within the sound discretion of the Court. . . .Essential to the process of evaluating proposed settlements, then, 'is the need to compare the terms of the compromise with the likely rewards of litigation.'" *In re Idearc Inc.,* 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009)(citations omitted).

### 1. The Probability of Success & Complexity and Expense of Litigation.[31]

In a nutshell, the Joint Settlement will result in Liberty Mutual paying $200,000.00 to the Myers I Trustee, a withdrawal of Liberty Mutual's proofs of claim, and a dismissal of the District Court Action. Liberty Mutual and the Myers I Trustee contend that the Joint Settlement "is fair and equitable and is in the best interest of the bankruptcy estate, all creditors and parties-in-interest and should be approved by the Court."[32]

---

[31]The expert witness for the Myers I Trustee addressed both of these elements during his testimony, therefore, the Court will discuss these two elements together.

[32]*Amended Joint Motion to Approve Settlement and Compromise,* Dkt. #347, unnumbered p. 4, June 5, 2014.

"With respect to the first factor, it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. 'The judge need only appraise himself of the relevant facts and law so that he can make an informed and intelligent decision. . . .'" *Cajun Electric*, 119 F.3d at 356 (citation omitted).

### a. Testimony of Expert

At the trial, C. Victor Welsh, III, (Welsh) testified on behalf of the Myers I Trustee. Welsh is an attorney who has been practicing law since 1985. Welsh primarily handles "plaintiffs' cases, both personal injury cases and business litigation cases."[33] Specifically, Welsh testified that he had

> a lot of experience specific to this case in reviewing insurance contracts, from a standpoint of determining uninsured motorist's coverage under automobile policies, homeowner policies, exclusions for various things such as shifting soil conditions, you know, intrusion of water.
>
> I've handled ERISA claims under ERISA policies for denial of disability benefits. I've handled cases involving death benefits, issues concerning lapses in premium, just a myriad of cases specific to this case involving interpretation of insurance policies that I personally have handled, . . .and many of those same types of cases I've reviewed and rejected because I didn't think that they were worthy of taking on.

(Trial Tr. at 10).

Based on his experience handling cases involving disputes over insurance policies, Welsh was hired by the Myers I Trustee as an expert "to evaluate the merits of the underlying [District Court Action]"[34] that is the subject of the Joint Settlement. Welsh discussed each count contained in the amended complaint in the District Court Action.

Welsh gave a thorough explanation of each count and then gave his expert opinion as to the

---

[33]Trial Tr. at 9-10.

[34]Trial Tr. at 11.

merit of each count.[35]  The Court will not recite in detail Welsh's testimony regarding each count.

In essence, Welsh testified that all seven of the counts pled in the District Court Action had no merit.

For example, Count 1 is a breach of contract claim against Fox Everett and Steve Lee.

Welsh testified that this claim has no merit because there was no contract between Infinity/Myers

and Fox Everett and Steve Lee.  (Trial Tr. at 22.)  Count 5 is a claim for damages to Myers' business

reputation.  Welsh testified that Liberty Mutual was entitled to, and did conduct an audit.  The audit

showed that Myers' company had additional employees, therefore, it owed Liberty Mutual

additional premiums.  Myers could have paid the premium to preserve his reputation and avoid any

damage to his reputation, but he did not.  Consequently, Welsh stated that Count 5 had no merit.

As to Count 6, the plaintiffs allege that estoppel and waiver should apply to prevent Liberty Mutual

from denying coverage under the policy.  Welsh testified that Count 6 has no merit because it is "a

clear proposition of Mississippi insurance law that waiver and estoppel cannot operate to extend risk

under a policy.  So there's nothing that an insurance agent, an agency or a company can do by way

of course of conduct to create coverage that otherwise does not exist under the policy."  (Trial Tr.

at 35.)

As to Myers' claims for potential damages and punitive damages (Count 7), Welsh testified

that Infinity's business operations stopped in early 2002.  At the time the Debtors initially filed the

District Court Action, Infinity had never made a profit, therefore, Welsh testified that "if a company

is not making any money there's no basis for claiming that it would make a whole bunch of money

in the future."[36]  As for punitive damages, Welsh testified that Liberty Mutual "had a legitimate or

---

[35]Discussion of each count in the amended complaint begins on the following pages of the Trial Transcript:  Count 1–p. 22; Count 2–p. 25; Count 3–p. 27; Count 4–p. 32; Count 5–p. 33; Count 6–p. 34; and Count 7–p. 40.

[36]Trial Tr. at 47.

arguable reason for doing what they did. So that would defeat a punitive damages claim." (Trial Tr. at 40-41.)[37]

The District Court Action was initiated in state court in 2002, and it was removed to federal court in 2004. Welsh testified that since the District Court Action was initially filed, numerous courts have addressed the counts raised by the Debtor and ruled in favor of the insurance companies, and therefore, the only way the Myers I Trustee could be successful on the merits is if the Myers I Trustee succeeded in persuading an appellate court to change the law.

> I mean this case has gone on for 10 or 12 years it appears because of these – well, let me state it this way, at some point you become so pinned in by legal precedent that you understand in order to win you've got to change the law and that's kind of what I'm looking at in this case if I were to take this case on.

> I'm so hemmed in by precedent and so hemmed in by courts that have already analyzed these same issues and reached decisions indicating that there's no merit in this case, what you're looking at is trying to go change the law. You're trying to move from this bankruptcy court to a district court judge on appellate review to the Fifth Circuit on appellate review and the time that it would take to go through that process is – you know, is anybody's guess.

> I mean I – the way I see it going there'll be a decision made by Judge Ellington in this bankruptcy case, then the case would apparently go to Judge Wingate or maybe initially decided by Judge Wingate, but either way it's going to wind up at the Fifth Circuit and it's going to take years to untangle all of this. And assuming somebody gets a favorable result from the Fifth Circuit and there's no remand, there could possibly be a remand and we'd do it all over again.[38]

Considering the testimony of Welsh, and the lack of any evidence or testimony to the contrary, the Court finds Welsh's testimony to be very persuasive. Welsh's testimony permits the

---

[37]Welsh was questioned about a report prepared by Glenda Glover regarding the business losses and/or damages suffered by Infinity. (Trial Tr. at 44-45 and 65-66). This report is attached as an exhibit to the Myers II Trustee Objection. At the trial, this report was not introduced into evidence nor did Ms. Glover appear and testify regarding her report. Consequently, in deciding whether the Joint Settlement should be approved, the Court will not give any consideration to Ms. Glover's report.

[38]Trial Tr. at 48.

Court to make an "informed and intelligent decision"[39] that the probability of the Myers I Trustee succeeding on the merits in the District Court Action is very low.

The Court further finds that in order to "change the law," the cost of achieving this goal would be at great expense and risk to the bankruptcy estate of the 2000 Case. In addition, even if the Myers I Trustee did not have to "change the law," based upon the history of the litigation between these parties, the Court finds that the final resolution of the District Court Action will take many years.

### b. Testimony of the Myers I Trustee

The Myers I Trustee testified that when negotiating the settlement with Liberty Mutual, her main objective was to obtain enough money to pay all of the creditors of the 2000 Case in full. (Trial Tr. at 106.). The Myers I Trustee introduced as Exhibit L-7 an analysis of the claims in the 2000 Case. Excluding Liberty Mutual's claims and the Claims filed by the Myers II Trustee, the amount of the allowed unsecured claims in the 2000 Case totals $131,083.92. (Trial Tr. at 108).

The Myers I Trustee stated that if the Myers II Trustee had not filed an objection to the Joint Settlement, she believed she would have been able to pay unsecured creditors one-hundred percent of their allowed claims. (*Id.*). The Myers I Trustee testified that she had incurred costs of approximately $20,000.00 in litigating the Myers II Trustee Objection to the Joint Settlement, and therefore, the creditors of the 2000 Case will not now be paid in full. (Trial Tr. at 110).

The Myers I Trustee testified that she asked Welsh if he would be willing to represent the Myers I Trustee in the District Court Action on a contingent fee basis. Welsh said that he would not take the case on behalf of the Myers I Trustee. (Trial Tr. at 134).

On cross-examination, the Myers I Trustee was questioned about her perceived flip-flopping

---

[39] *Cajun Electric*, 119 F.3d at 356.

on her prior position that the District Court Action was an action she wanted to pursue.[40]  In

explaining her changed position, the Myers I Trustee stated that:

> I erroneously believed five years ago that I should take the debtors' wishes and interests into consideration.  The Court, in its order, ruled that that was improper, that the debtor had acted in bad faith and that I should not have taken the debtors' opinions into consideration and that the interest of the creditors of the case were paramount and of the only concern.  And I heard what the court said and I've negotiated the settlement that prior to today would have paid the creditors in full without interest.  So I did not need Mr. Welsh's testimony because I was paying creditors in full.

(Trial Tr. at 120).

### c.  Summary

The only possibility for the Myers I Trustee to recover any money for the 2000 Case would

be if, and only if, the Myers I Trustee prevails against Liberty Mutual.  Considering the

uncontradicted testimony of Welsh and the testimony of the Myers I Trustee, the Court finds that

the probability of success of the District Court Action is, at best, very questionable.  As Welsh

testified, between the time the District Court Action was filed and today, the case law that has

developed does not favor a victory for the Myers I Trustee.  Further, the Court recognizes the major

expense and time needed to attempt to get the Fifth Circuit to change the law in favor of the Myers

I Trustee.

And if Liberty Mutual succeeded on its counterclaim for unpaid premiums, the Myers I

Trustee would have to recover an amount in excess of the unpaid premiums, any interest and costs[41]

---

[40]In 2009, the Myers I Trustee entered into a settlement agreement with the Debtors which would permit the Debtors to pursue the District Court Action on behalf of the Myers I Trustee.  In its March 9, 2010, Opinion, this Court did not approve this settlement.

[41]As of April 2002, Liberty Mutual's claim for unpaid premiums was $977,953.00.  As of 2015, Liberty Mutual's claim had ballooned to $2,659,120.00.  *Reply of Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd. and Steve Lee to Brief of J. Stephen Smith, Trustee,* Case No. 00-53489EE, Dkt. #419, p. 6, June 3, 2015.

before the Myers I Trustee would receive any money for the benefit of the 2000 Case.

## 2. All Other Factors

### a. Best Interests/Wishes of the Creditors

The only objection filed to the Joint Settlement was filed by the Myers II Trustee. As stated above, the Myers II Trustee is not a creditor of the 2000 Case and otherwise lacks standing to object to the Joint Settlement. The only creditor who has expressed an opinion with regard to the Joint Settlement is one of the parties to the Joint Settlement, Liberty Mutual. Liberty Mutual obviously believes that the settlement is in the best interests of the creditors of the 2000 Case.

Until 2014, other than the Myers I Trustee, the Debtors and Liberty Mutual have been the only parties to have actively participated in the 2000 Case, and the Court acknowledges, each for totally opposite reasons. The Debtors have been trying to proceed with the District Court Action, whereas Liberty Mutual has been trying to settle the District Court Action with the Myers I Trustee.

"We believe a bankruptcy court should consider the amount of creditor support for a compromise settlement as a 'factor bearing on the wisdom of the compromise,' as a way to show deference to the reasonable views of the creditors."[42] Liberty Mutual is the only creditor to express an opinion regarding the Joint Settlement, and considering same, the Court finds that this factor weighs in favor of approving the settlement.

### b. Arms-Length Transaction

No evidence at trial suggested that the Joint Settlement was not the result of an arms-length transaction. Nor was there any evidence at trial that suggested that the Joint Settlement was reached as a result of fraud or collusion.

---

[42]*Foster,* 68 F.3d at 918.

### 3. Summary

This Court and the District Court have held that the District Court Action was property of the 2000 Case. Any interest Myers had in the District Court Action was extinguished when it became property of the bankruptcy estate of the 2000 Case. Consequently, the Myers II Trustee has no standing to object to the Joint Settlement because of the *single estate rule* and because he only obtained whatever interest Myers had in the District Court Action, which was zero.

Having considered all of the factors established by the Fifth Circuit, the uncontradicted testimony of Welsh, and the testimony of the Myers I Trustee, the Court finds that the Joint Settlement is fair and equitable and in the best interests of the creditors of the 2000 Case bankruptcy estate. Therefore, the Joint Settlement should be approved.

### CONCLUSION

This case has been pending for almost sixteen (16) years. This case has involved numerous offers of settlement, discovery disputes, motions and adversaries–all of which have been vigorously litigated.[43]

Currently, the Court has before it the Joint Settlement. If approved, the Joint Settlement would have finally brought the 2000 Case to a close and would have allowed the unsecured creditors to be paid one-hundred percent of their allowed claims. But as has been the story of this case all along, Myers filed the 2014 Case in a final attempt to gain control of the District Court Action.

Under the *single estate rule*, the District Court Action is property of the bankruptcy estate of the 2000 Case and not the 2014 Case. Further, this Court and the District Court have both ruled that due to their bad faith, the Debtors/Myers do not have an interest in or claim to the District Court Action. Consequently, the Myers II Trustee has no interest in or claim to the District Court Action.

_____

[43]This will be the fifth (5th) Opinion written by the Court in the 2000 Case.

In order to approve a settlement, the Court must find that a settlement is "fair and equitable and in the best interests of the estate." *In re Foster,* 68 F.3d at 917 (citations omitted).  Based upon the testimony of the Myers I Trustee and the uncontradicted testimony of Welsh, the Court finds that the Joint Settlement is a fair and equitable settlement that is in the best interests of the creditors of the bankruptcy estate of the 2000 Case.  As directed by the Fifth Circuit, the Court apprised itself of "the relevant facts and law [to make] an informed and intelligent decision"[44] that the Joint Settlement should be approved.

To the extent the Court has not addressed any of the parties arguments or positions, it has considered them and determined that they would not alter the result.

A separate judgment consistent with this opinion will be entered in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure.

**##END OF OPINION##**

---

[44]*Cajun Electric,* 119 F.3d  at 356. (citation omitted).